UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHILD EVANGELISM FELLOWSHIP OF GREATER SAN DIEGO, | ) ) ) | Civil No. 05cv1166-IEG(WMc) |
| Plaintiff, | ) ) | Order Granting Plaintiff's Motion for Summary Judgment |
| v. | ) ) | [Doc. No. 62] |
| ALAN D. BERSIN, in his individual and official capacity as Superintendent of San Diego City Schools; LUIS ACLE in his individual and official capacity as President of the Board of Education of San Diego City Schools; MITZ LEE, in her individual and official capacity as Vice President of the Board of Education of San Diego City Schools; JOHN DE BECK, in his individual and official capacity as Member of the Board of Education of San Diego City Schools; SHEILA JACKSON, in her individual and official capacity as Member of the Board of Education of San Diego City Schools; KATHERINE NAKAMURA, in her individual and official capacity as Member of the Board of Education of San Diego City Schools, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

Plaintiff Child Evangelical Fellowship of Greater San Diego ("CEF") moves the Court for summary judgment awarding it $864.30 in actual damages, plus interest at the full legal rate. CEF also seeks an award of nominal damages and a declaration that it is the prevailing party pursuant to 42 U.S.C. § 1988. Defendants (or "District") have filed an opposition and CEF has filed a reply. This

motion is appropriate for submission on the papers and without oral argument pursuant to Local Rule 7.1(d)(1), and the November 21, 2008 hearing is VACATED. For the reasons set forth herein, Plaintiff's motion is GRANTED.

### *Factual Background and Procedural History*

The underlying facts and procedural history of this case were set forth in the Court's August 24, 2005 Order denying Plaintiff's motion for preliminary injunction and also in the Court's January 10, 2006 Order denying Plaintiff's motion for attorneys fees and costs. Plaintiff CEF is the local chapter of an international non-profit organization, Child Evangelism Fellowship, Inc., that operates after school clubs for elementary-age children which are called "Good News Clubs" ("GNCs"). GNCs teach many of the same values that are taught by organizations like the Boy Scouts and Campfire Girls, but from a religious perspective. The Supreme Court has determined that GNCs must be granted the same access to public school sites as other youth groups engaged in moral and character development such as the Boy Scouts. Good News Club v. Milford Cent. School Dist., 533 U.S. 98, 111-112 (2001). The District has not, in this litigation, disputed this legal point.

In 1999, CEF applied for use of the auditorium at Ericson Elementary School in the San Diego School District for the purposes of conducting GNC meetings after school hours. The District approved CEF's application for facilities use, but required CEF to pay a fee for use under the district's policy, AP 9205. That policy provides for "civic center use" of District facilities by "[o]rganizations, clubs, and associations formed for recreational, educational, political, economic, artistic, or moral purposes." AP 9205(B)(2). Such use of school facilities "may be on either a free, direct cost recovery, fair rental value, or commercial basis." At the time this action was filed, AP 9205(C)(3)(a) provided that "**[f]ree use** applies to activities directly supporting the district's adopted goals and educational programs; districtwide events designed to serve the youth and citizens of the district and planned and directed by school-related groups; and activities of community organizations whose primary purpose is service to district youth or the general welfare of the community and whose meetings are nonprofit." To further define the category of groups entitled to free use of facilities, AP 9205(c)(3)(a)(5) explicitly permitted free use by "Camp Fire, Inc., Boy Scouts, and similar youth groups." AP 9205(C)(3) further provides

the following standards to be applied to determine the cost to be charged those groups not entitled to free usage:

    b.   **Direct cost recovery use** applies to groups that are not authorized "free use" and whose purposes are not in conflict with the educational programs or goals of the district. . . .

    c.   **Fair rental value use** applies to groups that use school facilities or grounds for entertainment, meetings, or classes for which admission is charged or contributions are solicited and the net receipts are not expended for charitable purposes or for the welfare of district students.  Facilities requested by churches for conduct of services are included in the "fair rental value" use category. . . .

    d.   **Commercial use** applies to users who do not qualify for free use, direct cost recovery, or fair rental rates. . . .

Prior to the filing of this suit, the District required CEF to pay a fair rental value fee to use District facilities.  The District, however, historically allowed other youth organizations such as the Boy Scouts, Girl Scouts, and 4-H Clubs to use its facilities free of charge.

    Because CEF could not afford to pay the fair rental value fee to use District facilities, several volunteer teachers paid the District-required fees so that the GNC could meet at Ericson Elementary School.  The GNC met at Ericson Elementary School for several years, with these volunteers paying the usage fee required by the District.  During the 2004-05 school year, however, increasing fees resulted in the GNC being unable to meet at Ericson or any other elementary school in the San Diego School District.

    CEF filed its complaint against the District on June 3, 2005.  CEF alleged that the District's policy, requiring CEF to pay a fee for use of District facilities but allowing similar groups engaged in moral and character development to use the facilities free of charge, violated the First Amendment. After the action was filed, the District revised AP 9205 to eliminate free use by all similarly situated groups.

    By Order filed August 24, 2005, the Court denied Plaintiff's motion for preliminary injunction. Plaintiff immediately appealed the denial of its motion for preliminary injunction.  During the pendency of the appeal, because of strenuous objection by the Boy Scouts and similar youth organizations who were then also required to pay a fee to use District facilities under the revised version of AP 9205, the District again modified AP 9205.  This subsequent modification provided free use of District facilities to the concerned youth organizations, including CEF.  The parties thereafter entered into a Partial Settlement Agreement and Stipulated Dismissal.  The parties agreed that the Court would retain

jurisdiction to determine Plaintiff's claim for damages, as well as Plaintiff's claim for attorney's fees under 42 U.S.C. § 1988.

Plaintiff at that time did not pursue damages. Instead, Plaintiff moved the Court for an award of fees and costs as the prevailing party in this litigation. By order filed January 10, 2006, the Court denied Plaintiff's motion, finding the Settlement Agreement and Stipulated Dismissal did not materially alter the legal relationship between the parties or create any judicially-enforceable rights. Plaintiff appealed.

On October 23, 2007, Plaintiff voluntarily dismissed the appeal in order to prosecute the issue of damages before this Court. With jurisdiction now restored to this Court, Plaintiff now moves the Court for summary judgment regarding actual and nominal damages. Plaintiff also asks the Court to declare it is the prevailing party.

## *Discussion*

As indicated above, the Supreme Court has determined that GNCs must be granted the same access to public school sites as other youth groups engaged in moral and character development such as the Boy Scouts. Good News Club v. Milford Cent. School Dist., 533 U.S. 98, 111-112 (2001). Plaintiff, in its motion, devotes a good deal of discussion to establishing that the District's policy AP 9205, prior to the filing of this lawsuit, constituted unconstitutional viewpoint discrimination. Plaintiff also details the reasons why the District's actions, in denying CEF's request for a fee waiver, constituted unconstitutional viewpoint discrimination.

Defendant does not make any substantive argument in opposition to the motion. As the Court stated in its Order denying Plaintiff's motion for attorneys' fees and costs, "[w]ithout a doubt, the District's application of AP9205 to require CEF to pay a fee for use of the District facilities prior to the filing of this case constituted unconstitutional viewpoint discrimination." The only question posed by the present motion, therefore, is whether Plaintiff is entitled to actual damages, nominal damages, and/or prevailing party status.

### 1.   *Actual Damages*

Plaintiff has submitted a declaration establishing the amount of damages due and owing to CEF to be $864.30, which represents the fees paid to the District under the prior version of AP 9205.

[Declaration of Mary McAlister, ¶ 11.] Defendants do not dispute the amount of those damages. Instead, Defendants argue Plaintiff's claim for damages is moot because the District, on December 7, 2007, mailed a check to Plaintiff in the amount of $1,064.64, representing the amount of fees Plaintiff paid to the District, plus interest. [Declaration of Catherine Morrison, ¶ 5.]

In reply, Plaintiff argues the Defendants' unsolicited and unilateral tender of even the full amount of damages claimed does not moot its claim for damages. Plaintiff argues the unsolicited check the District mailed on December 7, 2007 contained a notation "final and full settlement of all claims." Because the parties had not reached an agreement regarding the outstanding issue of attorneys fees, Plaintiff did not negotiate the unsolicited check but instead notified Defendants that the tender would not be accepted. [McAlister Declaration, Exhibit B.]

In support of its mootness argument, Defendants cite only one case, Arizonans for Official English v. Arizona, 520 U.S. 43, 71 (1997). In that case, the Supreme Court held that a nominal damages claim asserted only after the plaintiff lost standing to assert her remaining claims could not revive her case. The Court held it is appropriate to vacate a judgment as moot when the mootness occurs through circumstances not attributable to the parties or by the unilateral action of the prevailing party. Id. As Plaintiff points out, neither of these circumstances is present in this case.

As noted by the Ninth Circuit when it dismissed Plaintiff's appeal of the attorneys fees ruling in this case, there remains a live controversy between the parties regarding actual damages. Although the amount is undisputed, those damages remains due and owing. Therefore, the Court finds Plaintiff is entitled to summary judgment on its claim for actual damages in the amount of $864.30, plus interest.

2.  *Nominal Damages*

Plaintiff also seeks nominal damages on its claims. Defendants' opposition does not even address Plaintiff's request for nominal damages. Typically, nominal damages are available in a § 1983 action where the violation of a constitutional right produced no actual damages. Bernhardt v. County of Los Angeles, 279 F.3d 862, 872 (9th Cir. 2002) (citing United States v. Marolf, 173 F.3d 1213, 1219 (9th Cir. 1999)). The purpose of nominal damages is purely symbolic, to vindicate the violation of a constitutional right. Schneider v. County of San Diego, 285 F.3d 784, 795 (9th Cir. 2002).

The Ninth Circuit has permitted a § 1983 plaintiff to recover nominal damages where the plaintiff also recovered compensatory damages *under a separate cause of action*. Schneider, 285 F.3d at 795. However, Plaintiff has cited no authority, and the Court is unaware of any, permitting the Court to award nominal damages in a case such as this where the only alleged constitutional violation resulted in an award of actual damages. Because the Court has found Plaintiff is entitled to $864.30, plus interest, in actual damages flowing from the constitutional violation, the Court denies Plaintiff's motion to enter judgment in its favor for nominal damages.

*3.     Prevailing Party Status*

Lastly, Plaintiff asks the Court to declare it to be a prevailing party entitled to fees under 42 U.SC. § 1988. Defendants do not offer any substantive opposition to Plaintiff's request. Instead, Defendants argue the Plaintiff should make any argument regarding prevailing party status in a motion for attorneys fees.

The case cited by Defendants, Farrar v. Hobby, 506 U.S. 103 (1992), involved a motion for attorneys fees. However, nothing in that case requires the issue of "prevailing party" status be resolved by way of a motion for attorneys fees. In Farrar, the Supreme Court found "the prevailing party inquiry does not turn on the magnitude of the relief obtained." 506 U.S. at 114. The Court held that even an award of nominal damages, where there are no actual damages flowing from a constitutional violation, confers upon the plaintiff the status of "prevailing party" under § 1988. Id. at 112.

Defendants can certainly argue in opposition to an any motion for attorneys fees brought by Plaintiff, that Plaintiff achieved minimal success not warranting any actual award of fees. Farrar, 506 U.S. at 114 (noting that reasonableness of a fee award under § 1988 is related to the degree of plaintiff's overall success). However, based upon the Court's finding that Plaintiff is entitled to actual damages in the amount of $864.30, plus interest, Plaintiff is the prevailing party in this case.

*Conclusion*

For the reasons set forth herein, the Court GRANTS Plaintiff's motion for summary judgment. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendants in the amount of

///

///

1  $864.30, plus interest.  Plaintiff, as the prevailing party, may bring a motion for attorneys fees in due
2  course.
3       **IT IS SO ORDERED**.
4
5  **DATED: December 1, 2008**

                                                       **IRMA E. GONZALEZ, Chief Judge**
                                                       **United States District Court**