# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHILD EVANGELISM FELLOWSHIP OF GREATER SAN DIEGO,<br><br>                                    Plaintiff,<br><br>    vs.<br><br>LUIS ACLE in his individual and official capacity as President of the Board of Education of San Diego City Schools; MITZ LEE, in her individual and official capacity as Vice President of the Board of Education of San Diego City Schools; JOHN DE BECK, in his individual and official capacity as Member of the Board of Education of San Diego City Schools; SHEILA JACKSON, in her individual and official capacity as Member of the Board of Education of San Diego City Schools; KATHERINE NAKAMURA, in her individual and official capacity as Member of the Board of Education of San Diego City Schools,<br><br>                                    Defendants. | CASE NO. 05cv1166-IEG(WMc)<br><br>Order Granting in Part Plaintiff's Motion for Attorney's Fees<br>[Doc. No. 69] |

Plaintiff Child Evangelism Fellowship of Greater San Diego ("CEF") moves the Court for an award of attorney's fees and costs as the prevailing party in this litigation. Defendants have filed an opposition, and Plaintiff has filed a reply.

This motion is appropriate for submission on the papers and without oral argument pursuant to Local Civil Rule 7.1(d)(1), and the Court previously vacated the hearing date. For the

reasons set forth herein, Plaintiff's motion is GRANTED IN PART.

## *Background*

Plaintiff initially filed this action on June 3, 2005, alleging that the Defendants engaged in unconstitutional viewpoint discrimination when they required CEF to pay a fee to use school facilities for its after school "Good News Club" meetings. [Doc. No. 1.] Plaintiff alleged the District allowed similarly situated youth organizations engaged in moral and character development, such as Boy Scouts and Girl Scouts, to use the facilities free of charge. Plaintiff sought declaratory and injunctive relief, as well as actual damages, for the alleged constitutional violations. Plaintiff also filed a motion for preliminary injunction. [Doc. No. 4]

Almost immediately after the complaint and motion for preliminary injunction were filed, the Board of Education revised its policy to eliminate free use by all youth groups and other organizations engaged in "pure speech."[1] Although Plaintiff argued the revised policy still raised constitutional concerns, the Court on August 24, 2005, denied Plaintiff's motion for preliminary injunction. [Doc. No. 27.] Plaintiff immediately appealed the denial of its motion for preliminary injunction.

During the pendency of the appeal, due to strenuous objection by the Boy Scouts and similar youth organizations who, for the first time, were required to pay a fee to use District facilities under the revised policy, the Board of Education again amended its policy. The second revised policy allowed CEF and all similarly situated youth organizations to use District facilities free of charge.

Thereafter, the parties entered into a Partial Settlement Agreement. The Partial Settlement Agreement was incorporated into a Stipulated Dismissal which the parties filed with the Court on November 16, 2005. [Doc. No. 36.] The Partial Settlement Agreement recited the fact that the Board of Education had amended its policy to provide for free use of facilities by the Boy Scouts, Girl Scouts, and Good News Clubs, and other similar youth groups. [Doc. No. 36, Exhibit A, page 1, ¶ 1.] The Partial Settlement Agreement further provided that Plaintiff would dismiss its

---

[1] Defendants' counsel clarified that the new policy was intended to require Plaintiff and similar organizations engaged in "pure speech" to pay a fee to use the facilities, while allowing groups engaged in non-pure speech, such as the PTA and ASB, to use facilities free of charge.

1  requests for injunctive and declaratory relief, as well as its appeal of the Court's order denying its
2  motion for preliminary injunction. [Id., page 2, ¶¶ 3 and 5.] Finally, the Agreement provided that
3  the Court would retain jurisdiction to resolve the issues of damages and attorney's fees, and to
4  enforce the terms of the Agreement. [Id., ¶ 6.]

5  Plaintiff moved for attorney's fees, arguing it was the prevailing party. [Doc. No. 37.] On
6  January 10, 2006, the Court denied Plaintiff's motion for attorney's fees, finding the Partial
7  Settlement Agreement and Stipulated Dismissal did not materially alter the legal relationship
8  between the parties or create any judicially-enforceable rights. [Doc. No. 52.] Plaintiff appealed.
9  [Doc. No. 54.]

10  On October 23, 2007, Plaintiff voluntarily dismissed its appeal in order to prosecute the
11  issue of damages before this Court.[2] [Doc. No. 60.] On December 1, 2008, the Court granted
12  summary judgment in favor of Plaintiff on its claim for damages in the amount of $864.30 plus
13  interest, and declared Plaintiff to be the prevailing party. [Doc. No. 67.] Plaintiff now moves
14  again for an award of attorney's fees.

### *Discussion*

16  Pursuant to 42 U.S.C. § 1988, the court "may allow the prevailing party . . . a reasonable
17  attorney's fee as part of the costs . . . ." The Court already determined in its order granting
18  Plaintiff's motion for summary judgment on damages, that Plaintiff is the prevailing party in this
19  action.[3] Two questions, therefore, remain at this time: (1) does the nature of Plaintiff's recovery
20  or other "special circumstances" justify a denial of attorney's fees notwithstanding Plaintiff's
21  prevailing party status, and (2) if Plaintiff is entitled to attorney's fees, what amount of fees would
22  be reasonable.

---

[2] The Ninth Circuit Court of Appeals ordered Plaintiff/Appellant to show cause why the appeal should not dismissed for lack of jurisdiction because the issue of damages remained pending before the district court. In response, Plaintiff/Appellant voluntarily dismissed the appeal.

[3] In its motion for attorney's fees, Plaintiff argues at length that it was entitled to prevailing party status in 2005, based upon the Partial Settlement Agreement. The Court's January 10, 2006 Order discussed the reasons why Plaintiff, at that point in the litigation, failed to demonstrate any "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute," and therefore was not the "prevailing party." The Court will not discuss the issue again in this order.

*1.      Is Plaintiff entitled to attorney's fees?*

"Congress' intent in enacting § 1988 was to attract competent counsel to prosecute civil rights cases, where 'victims ordinarily cannot afford to purchase legal services at the rates set by the private market'." Mendez v. County of San Bernardino, 540 F.3d 1109, 1126 (9th Cir. 2008) (quoting City of Riverside v. Rivera, 477 U.S. 561, 576 (1986) (plurality opinion)). As a result, a prevailing party is ordinarily entitled to recover attorney's fees and "'a court's discretion to deny fees under § 1988 is very narrow.'" Mendez, 540 F.3d at 1126 (quoting Herrington v. County of Sonoma, 883 F.2d 739, 743 (9th Cir. 1989)). A court may deny fees to a plaintiff who pursues a large damages award but wins only nominal damages after a purely technical or *de minimis* victory. Mendez, 540 F.3d at 1126 (citing Farrar v. Hobby, 506 U.S. 103, 115 (1992). The court may also deny a prevailing party its attorney's fees under § 1988 "when 'special circumstances exist sufficient to render an award unjust'." Mendez, 540 F.3d at 1126 (quoting Thomas v. City of Tacoma, 410 F.3d 644, 648 (9th Cir. 2005)). In determining whether special circumstances justify denial of an award of attorney's fees even to a prevailing party, the court should determine "(1) whether allowing attorney fees would further the purposes of § 1988, and (2) whether the balance of the equities favors or disfavors the denial of fees." Thomas, 410 F.3d at 648 (citing Gilbrook v. City of Westminster, 177 F.3d 839, 878 (9th Cir. 1999)).

The Court finds Plaintiff, who is now entitled to prevailing party status by virtue of its summary judgment on actual damages, is entitled to an award of attorney's fees. Defendants argue Plaintiff achieved a *de minimis* and purely technical victory in this case because it received only $864.30 in damages. However, Plaintiff achieved virtually everything it sought in this case. Plaintiff sought $864.30 in damages, and Plaintiff obtained a judgment for that amount. Plaintiff also sought declaratory and injunctive relief. Although Plaintiff dismissed those claims as part of the Partial Settlement Agreement, the Court's grant of summary judgment in favor of Plaintiff on Plaintiff's claim for damages implicitly declares that the District's application of its prior policy, to deny Plaintiff free use of its facilities, constituted unconstitutional viewpoint discrimination. Defendants did not even argue in its opposition to Plaintiff's summary judgment motion that its pre-litigation application of the fee-for-use policy passed constitutional muster. This implicit

1  finding also acts as a *de facto* bar to the Board of Education amending the policy again in the
2  future to once again deny Plaintiff use of District facilities on the same basis as other similar youth
3  organizations.  Thus, this case is distinguishable from Farrar, and similar cases cited by
4  Defendants, where the plaintiff sought a high amount of damages but recovered very little.
5  Plaintiff's victory in this case was not merely technical or *de minimis*.

6  Furthermore, "special circumstances" do not justify a denial of fees in this case.  This is
7  exactly the type of "high-risk, low-reward constitutional claim[] that motivated Congress to enact
8  § 1988." Mendez, 540 F.3d at 1126.  Few counsel would take a case like this, where the potential
9  damages were only $864.30.  Yet it took counsel filing this lawsuit to persuade the Defendants
10 grant Plaintiff access to District facilities on the same fee terms as similarly situated youth
11 organizations. Thus, Plaintiff vindicated an important constitutional claim and is entitled to its
12 attorney's fees.

13 Defendants argue Plaintiff should be denied fees, or granted only a very low amount of
14 fees, because the District offered, immediately after the case was filed, to resolve all issues.
15 Defendants argue they asked Plaintiff not to expend attorney time litigating this case because it
16 would be resolved shortly.  It is noteworthy, however, that Defendants' first reaction to this
17 lawsuit was not to begin applying its then-existing policy in a such a manner as to allow Plaintiff
18 to use the facilities for free as the Boy Scouts, Girls Scouts, Campfire Girls, 4-H, and other similar
19 groups had been doing for years.  Instead, Defendants immediately changed its policy to require
20 all youth organizations to start paying a fee to use the facilities.  The Court does not imply that
21 Defendants were constitutionally required to allow Plaintiff to use the facilities for free, but merely
22 notes that the Defendants chose to take a course of action antagonistic to Plaintiff's interests, thus
23 contributing to the continuation of the legal proceedings.  Only after receiving vocal complaints by
24 other larger groups, such as the Boy Scouts, did the Defendants agree to allow Plaintiff and all
25 similarly situated groups to use once again District facilities for free.

26 Defendants also argue the issue of damages was never in dispute.  After Plaintiff dismissed
27 its appeal of the Court's January 2006 order denying the first attorney's fees motion, and before
28 Plaintiff filed its summary judgment motion, Defendants mailed Plaintiff's counsel a check for the

1 amount of damages. The check, however, indicated that it was in "full and final settlement" of
2 Plaintiff's claims, despite the fact the parties had not discussed any terms for the payment of
3 attorney's fees. Defendants in this case never substantively disputed Plaintiff's claim that the
4 District's pre-litigation application of its facilities use policy violated Plaintiff's First Amendment
5 rights. In addition, Defendants never disputed the fact that Plaintiff suffered actual monetary
6 damages as a result of the District's application of its policy. Nevertheless, it appears from the
7 record that Defendants would not agree at any time during this litigation that Plaintiff was a
8 "prevailing party" entitled to at least some amount of attorney's fees. Thus, although Defendants
9 argue Plaintiff should be denied fees because it unnecessarily prolonged this litigation solely over
10 the issue of attorney's fees, both parties bear some responsibility for the vigorous litigation of the
11 issue of attorney's fees in this case.

12 After reviewing all of the relevant circumstances, the Court finds the Plaintiff's success in
13 this case was not merely *de minimus* or technical and there are no "special circumstances"
14 warranting a complete denial of fees under § 1988. Therefore, the Court will consider what amount
15 of fees and costs is reasonable.

16 *2.     What amount of fees is reasonable?*

17 Plaintiff argues it is entitled to recover all of its fees and costs, in the total amount of
18 $122,176.50 and $4,156.58 respectively, for all legal work in this action from the filing of the
19 complaint through this attorney's fees motion. By contrast, Defendants urge the Court to award
20 fees and costs only for Plaintiff's work on the summary judgment motion following Plaintiff's
21 voluntary dismissal of the appeal of the denial of the first attorneys fees motion, in a total amount
22 of no more than $5,956.79.

23 As a starting point for determining what amount of fees is "reasonable," the court must
24 calculate a lodestar figure, multiplying the number of hours reasonably expended on the litigation
25 by a reasonable hourly fee. Mendez, 540 F.3d at 1126; Morales v. City of San Rafael, 96 F.3d
26 359, 363-64 (9th Cir. 1996).

27     a.     Reasonable Hours

28 In determining the number of hours to be compensated, the court must consider "whether,

1  in light of the circumstances, the time could reasonably have been billed to a private client."
2  Moreno v. City of Sacramento, 534 F.3d 1106, 1111 (9th Cir. 2008).  Plaintiff has submitted
3  declarations of its counsel, Matthew Staver, Mary McAlister, and Stephen Crampton, as well as
4  detailed billing records, in support of its motion for attorney's fees.  Plaintiff's counsel seeks
5  compensation for the following hours, through the filing of the reply brief:

|  |  |
|---|---|
| Matthew D. Staver | 61.80 hours |
| Mary McAlister | 310.50 hours |
| Stephen M. Crampton | 11.90 hours |
| Harry Mihet | 19.50 hours |

10  Defendants attack the reasonableness of the hours claimed by Plaintiff, arguing the only
11 stage of the litigation which is reasonably compensable is the recent summary judgment motion.
12 Defendants also argue Plaintiff has "distorted" its bills in such a way as to render all of counsel's
13 claimed hours "suspect."

*i. Work performed on various stages of the litigation*

15  The Court finds Plaintiff is entitled to attorney's fees associated with most of the phases of
16 this action.  First, Plaintiff is entitled to fees associated with the initial filing of the complaint.
17 Defendants have submitted declarations claiming they were working on resolving the issue of
18 Plaintiff's access to District facilities before the case was filed, and did not ignore Plaintiff's pre-
19 litigation letters.  [Declaration of Jose Gonzales in Support of Opposition, ¶¶ 2-7 (received letters
20 dated October 28, 2004, January 21, 2005, and March 11, 2005).]  However, it is undisputed that
21 Defendants were on notice of Plaintiff's claim nine months before the Complaint was filed, but did
22 not make any change to its policy during that time period.  Once Plaintiff filed the lawsuit, the
23 Board of Education was able to act very quickly after the action was filed, amending the policy for
24 the first time on July 26, 2005. In addition, although Defendants argue the complaint was a "cut
25 and paste" job from an earlier lawsuit, it is reasonable for counsel to build upon prior work it has
26 performed.

27  Second, although Plaintiff ultimately did not prevail on its motion for preliminary
28 injunction, and ultimately dismissed its appeal of the Court's denial of the preliminary injunction

1  motion, such proceedings were a necessary part of this litigation. Plaintiff filed the motion for
2  preliminary injunction before the Board of Education took action to amend the policy on July 26,
3  2005. Even after the policy was amended, Plaintiff continued to raise genuine legal issues
4  regarding the constitutionality of the new policy which required Plaintiff and other youth
5  organizations engaged in "pure speech" to pay a fee to use District facilities but still allowed other
6  groups engaged in "non-pure speech" to use the premises for free. The Court cannot say the time
7  spent on the preliminary injunction proceedings was unreasonable.

8  Third, Plaintiff is entitled to fees for the time spent by counsel negotiating and entering into
9  the Partial Settlement Agreement. Defendants have provided no argument as to why counsel's
10  time spent in settlement discussions and in executing the Partial Settlement Agreement are not
11  reasonable.

12  Fourth, although Plaintiff ultimately did not prevail on its first motion for attorney's fees,
13  the Court also cannot say those proceedings were unreasonable. As reflected in the January 10,
14  2006 order denying Plaintiff's first motion for attorney's fees, the Court does not believe the
15  Partial Settlement Agreement, coupled with the District's voluntary change in the underlying
16  policy after this action was filed, effected a "material alteration in the legal relationship between
17  the parties." Thus, the Court denied the Plaintiff's first motion for attorney's fees. The question
18  of whether a party who enters into a settlement is considered a "prevailing party," however, is not
19  a straight-forward legal issue. Plaintiff's legal arguments in the first attorney's fee motion were far
20  from frivolous.

21  Finally, Plaintiff is entitled to its fees associated with the current motion. Generally, a
22  prevailing party is entitled to seek fees for time spent proving entitlement to, and amount of,
23  attorney's fees and costs. Clark v. City of Los Angeles, 803 F.2d 987, 991 (9th Cir. 1986).

24  The Court finds, however, that Plaintiff is not entitled to compensation for any of the hours
25  its counsel spent appealing the Court's January 2006 order denying Plaintiff's first motion for
26  attorneys fees. The Partial Settlement Agreement, and Stipulation of Dismissal based thereon,
27  provided that this Court would reserve jurisdiction to determine damages and attorney's fees. As
28  such, the Court's order denying Plaintiff's first motion for attorney's fees was interlocutory in

1  nature, and not appealable. Instead of completing its litigation of the issue of damages, an award of
2  which would have certainly entitled Plaintiff to prevailing party status, Plaintiff spent almost two
3  years pursuing an appeal of the Court's order denying the first attorney's fee motion. Plaintiff
4  argues the appeal "moved the litigation forward to a successful conclusion" or alternatively that
5  the appeal "centered on prevailing party status, which were the same arguments Plaintiff pressed
6  before this Court after the remand." The Court disagrees.  The prevailing party inquiry three years
7  ago, after the parties entered into the Partial Settlement Agreement which provided for no
8  injunctive, declaratory, or monetary relief, was extremely complex.  Following remand, Plaintiff
9  moved for summary judgment on damages, obtained a monetary judgment, and was entitled as a
10 matter of law to prevailing party status. Farrar, 506 U.S. at 114 (holding that a party who recovers
11 damages, in any amount, is a prevailing party).  Because the Plaintiff obtained no benefit in this
12 litigation from pursuing the appeal of the January 2006 order denying the first attorney's fees
13 litigation, the Court finds the hours associated with the appeal are not reasonably compensable.[4]

14                     *ii.      Reasonableness of hours billed*

15 Defendants also challenge the reasonableness of the total number of hours spent by
16 Plaintiff's counsel, arguing Plaintiff distorted its bills to increase its fee request.  The burden is
17 primarily upon the losing party to point to specific places in the prevailing party's bills where
18 hours claimed are excessive, duplicative, or otherwise unreasonable. Moreno, 534 F.3d 1116.
19 Defendants have poured over the bills submitted by Plaintiff's counsel in support of the
20 current motion, comparing the current billing statements to those which Plaintiff filed in support of
21 its first motion for attorney's fees in November of 2005.  Defendants point to a number of
22 "discrepancies" in the bills and argue these billing "distortions" "call the veracity of the bills into
23 question."
24 The Court has fully reviewed the "discrepancies" in the billings as pointed out by

---

[4] According to the Court's calculation, Plaintiff's counsel billed the following hours between January 12, 2006, when counsel received the Court's order denying Plaintiff's first motion for attorney's fees, and October 22, 2007, when Plaintiff's counsel dismissed the appeal of that order:
    Mary McAlister           67.6 hours
    Matthew Staver          20.2 hours
    Stephen Crampton      6.8 hours.

Defendants. What Defendants have shown is that Plaintiff *reduced* Attorney McAlister's total hours billed by 3.2 hours since the first attorney's fees motion. This is in addition to the 3.4 hours of Attorney Erik Stanley's ("EWS") time that was voluntarily deleted. The Court is not persuaded that Plaintiff's revision of its prior billings, resulting in a net decrease of the hours Plaintiff seeks as to two of the attorneys, justifies any further reduction in the number of hours Plaintiff claims. Defendants point out that an additional 2.7 hours of Mr. Stanley's time was not deleted, but was instead billed to Attorney Matthew Staver. Because Plaintiff has not provided any explanation for this change in the billing individual, the Court will disallow those 2.7 hours of Mr. Staver's time. In addition, Defendants point to a new time entry by Mr. Staver for attending the Early Neutral Evaluation Conference on September 6, 2005. Because Plaintiff has submitted no evidence that Mr. Staver in fact attended the conference, the Court will disallow those 2.2 hours of Mr. Staver's time.

Defendants have also submitted a declaration by Attorney James McElroy, opining there are additional reasons why the hours billed by Plaintiff's counsel are unreasonable. First, Mr. McElroy opines that it is not reasonable for Attorney Matthew Staver, with only 3 years more experience than Attorney Mary McAlister, to have to review Ms. McAlister's work at a rate of $450 an hour. In particular, Mr. McElroy points to entries on May 16, 2005 (0.4 hours), June 6, 2005 (2.3 hours), and November 17, 2005 (2.7 hours)[5] as being unnecessary and duplicative. In its reply, however, Plaintiff's counsel clarifies that while Ms. McAlister has practiced law almost as long as Mr. Staver, Mr. Staver has much greater experience litigating First Amendment issues. As a result, the Court does not find these arguably "duplicative" hours to be unreasonable.

Mr. McElroy next opines that it was unreasonable and unnecessary for Attorney Stephen Crampton to perform any work in this action given Ms. McAlister's level of experience and familiarity with the issues. Mr. McElroy points specifically to time billed by Mr. Crampton on

---

[5] Mr. McElroy also points to time billed by Mr. Staver on May 6, 2006 and July 7, 2006, but the Court has already determined all hours billed during this time, when Plaintiff was pursuing its appeal of the Court's January 2006 order denying attorney's fees, is not reasonably compensable.

1  December 2, 2008 (3.4 hours)[6]. A review of this time entry, however, indicates Mr. Crampton's
2  time was spent reviewing emails, briefs, and other materials regarding settlement negotiations and
3  the prior dismissal. The Court cannot say such hours are unreasonable.
4       Finally, Defendants object to the time claimed by Plaintiff's counsel with regard to the
5  reply brief on this motion. Defendants point to the entry by Attorney Harry Mihet, for 1.1 hours,
6  to review the opposition papers, arguing such time was unreasonable as Mr. Mihet did not perform
7  any other work with regard to the reply brief. Defendants also argue it was unreasonable for Ms.
8  McAlister to have spent 27.4 hours on a 10-page reply brief. Defendants' opposition raised
9  numerous factual issues which Plaintiff needed to explore and analyze. The Court cannot say
10  these hours were unreasonable.
11      b.   <u>Reasonable Hourly Rate</u>
12      Plaintiff seeks fees for its attorneys at the following hourly rates:
13      Matthew Staver      $450/hour
14      Stephen Crampton      $375/hour
15      Mary McAlister      $300/hour
16      Harry Mihet      $285/hour.
17  In opposition, Defendants point out that Plaintiff in its November 2005 motion for attorneys fees
18  sought fees for Mr. Staver at the lower rate of $350/hour and for Ms. McAlister at the lower rate of
19  $275/hour. Defendants argue Plaintiff's application of the higher hourly billing rate in this case is
20  improper.
21      As Plaintiff points out in reply, as a general rule the prevailing party is entitled to
22  compensation for the delay in payment, either by applying current billing rates to al time expended
23  in the case or by using historic rates and adding interest or another enhancement. <u>Welch v.
24  Metropolitan Life Ins. Co.</u>, 480 F.3d 942, 947 (9th Cir. 2007). As such, there is nothing "improper"
25  or "irregular" about Plaintiff now seeking fees utilizing counsel's current hourly rate.
26      Nonetheless, the Court finds the delay in payment of fees in this case is attributable to

---

[6] Mr. McElroy also points to time billed by Mr. Crampton on October 8, 2007, but the Court has already determined all hours billed during this period, while Plaintiff was pursuing its appeal of the Court's January 2006 order denying attorney's fees, is not reasonably compensable.

Plaintiff's pursuit of its premature appeal of the Court's January 2006 order denying its first attorney's fees motion. Plaintiff could and should have brought its motion for summary judgment on damages in 2006. As a result, the Court will not apply the higher hourly rates for attorneys Staver and McAlister, but will instead calculate the reasonable fees using the hourly billing rates reflected in Plaintiff's first motion for attorney's fees.

Defendants have made no objection to the hourly rates requested for attorneys Stephen Crampton ($375/hour) and Harry Mihet ($285/hour). Thus, the Court will apply the hourly rates requested by Plaintiff as to these attorneys.

<u>c.</u>   Calculation of Fees

Based upon the foregoing, the Court calculates Plaintiff's reasonable attorney's fees as follows:

| Attorney | Hours claimed | Hours omitted | Hours allowed | Hourly rate | Total |
|---|---|---|---|---|---|
| Matthew Staver | 61.20 | 20.20 (atty. fee appeal)<br>2.70 (formerly EWS)<br>2.20 (attending ENE) | 36.10 | $350 | $12,635.00 |
| Mary McAlister | 310.50 | 67.60 (atty. fee appeal | 242.90 | $275 | $66,797.50 |
| Stephen Crampton | 11.90 | 6.80 (atty. fee appeal) | 5.10 | $375 | $1,912.50 |
| Harry Mihet | 19.50 | none | 19.50 | $285 | $5,557.50 |
| | | | | | **$86,902.50** |

<u>d.</u>   Adjustment to Lodestar

Once a court has calculated the lodestar, it can then adjust that presumptively reasonable calculation of fees, if necessary and to the extent not subsumed in the initial calculation, based upon the following twelve factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Kerr v. Screen Guild Extras, Inc.</u>, 526 F.2d 67, 70 (9th Cir.1975). Defendants have not argued that

1  any of these factors apply, and the Court finds there are no factors which were not subsumed in the
2  original lodestar calculation, which would justify further reduction of the fee award.

3  <u>*3.  Costs*</u>

4  Defendants do not attack any of the $4,156.58 in costs claimed by Plaintiff, but instead
5  argues Plaintiff should be compensated only for the $256.79 associated with Plaintiff's motion for
6  summary judgment on damages.  For the reasons explained above, the Court finds Plaintiff is
7  entitled to costs for all portions of this case with the exception of the costs associated with the
8  appeal of the Court's January 2006 order denying Plaintiff's first attorney's fees motion.  Thus, the
9  Court will deduct all costs incurred between January 12, 2006, when counsel received the Court's
10 order denying Plaintiff's first motion for attorney's fees, and October 22, 2007, when Plaintiff's
11 counsel dismissed the appeal of that order, in the amount of $1,304.92.  The Court finds the
12 remaining costs of $2,851.66 are reasonably compensable.

13                                    *<u>Conclusion</u>*

14  For the reasons set forth herein, the Court GRANTS IN PART Plaintiff's motion for
15 attorney's fees and costs. The Court awards Plaintiff its reasonable attorney's fees in the amount of
16 $86,902.50 and reasonable costs in the amount of $2,851.66.  The Clerk shall close this case.

17  **IT IS SO ORDERED**.

19  **DATED: February 24, 2009**

20  _____
    **IRMA E. GONZALEZ, Chief Judge**
21  **United States District Court**